JOSHUA B. WHARTON, JAMES JESTER, JAMES CLARK, JAMES D. KINNEY, BENEDICT GILDERSLEVE, WILLIAM K. EVANS, HENRY C. COOPER, JOHN P. BAUGH, DANIEL BAUGH, ROBERT F. KENNEDY, JOHN J. BAILEY, HENRY J. DAVIS, ELTON B. GIFFAND, SAMUEL W. VON CULIN, BENJ. V. MARSH, LEWIS W. HAYWARD, EDWARD G. TOWNSEND, HENRY HENDERSON, RICHARD WOOD, SAMUEL G. GODWIN, J. A. PEARCE AND JOHN E. WORDEN.

*vs.*

JOHN F. CLEMENTS, WILLIAM S. PROUSE, CHARLES H. B. DAY, JAMES W. GREEN, PRESIDENT AND DIRECTORS OF THE BANK OF SMYRNA, JOEL CLEMENTS, EZEKIEL DAWSON, JOSHUA R. CLEMENTS, THOMAS PROUSE, DANIEL L. McBRIDE, JOHN LOWDEN AND WM. WHITAKER, SHERIFF.

Kent, *March T. 1868.*

A partner, with the knowledge of his co-partner, converted, to the use of the firm, money, received by him, as a United States deputy collector of internal

27

revenue; *Held*,that a bond of the firm given to indemnify the sureties of the deputy collector, was valid as a partnership obligation.

Such bond, valid as an indemnity although executed before the sureties had made good the defalcation, and although in form it was a bond for the payment of money.

The statute of insolvency, *Revised Code, ch.* 121 *sec.* 4, applies only to cases in which an assignment for the benefit of creditors is made, and does not forbid the preference by a debtor of certain creditors otherwise, even though given in contemplation of insolvency.

An answer responsive to the bill is evidence where fraud is charged as in other cases, and may, if not overcome by counter proof, establish the defense, without other evidence.

*Quere.* What remedy a court of equity would afford, to compel sureties, holding a money-bond as indemnity,to pay the debt before realizing the proceeds of the bond, or to refund them if they should have received them and should prove, ultimately, not to be damnified.

BILL IN EQUITY FOR AN INJUNCTION.—The material facts in this case were these :

John F. Clements, a United States deputy collector of internal revenue, converted the public revenue collected by him to the use of the firm of J. F. Clements & Co., of which he was a member. This was done with the knowledge and concurrence of his co-partner. The firm becoming insolvent, Clements and his co-partner executed their joint obligation to indemnify the defendants as sureties in Clements official bond. The obligation so given was an absolute bond for the payment of $5,000, with a warrant of attorney for the confession of judgment annexed. Judgment was confessed upon the bond and execution issued, under which the partnership goods were levied upon and sold. The complainants, except Wharton who had a judgment by confession, September 18th, 1865, being certain simple contract creditors of the firm, then filed this bill to restrain the Sheriff from paying to the sureties the proceeds of their execution, praying that the fund might be held, in order to meet their claims when

prosecuted to judgment. They had since obtained judgments for their respective claims.

At the time of the execution of the indemnifying bond, the sureties of Clements had sustained no damage, but since the goods were sold under their execution, and in fact since this bill was filed, they had, under legal process, made good to the United States collector Clements' defalcation to an amount exceeding the fund in the Sheriff's hands. Whether they were entitled to take the proceeds of their execution, or whether these proceeds should be held applicable to the judgments of the complainants as creditors of the firm, was the main question in controversy.

The bill originally joined, as defendants, several other execution creditors, besides Pickering *et al.*, the sureties, and the sum total of the writs of *fieri facias* levied was in excess of the amount of the proceeds in the Sheriff's hands. The bill, however, was dismissed, from time to time, as to all the defendants, except Pickering *et al.*, the sureties, and the Sheriff allowed to pay their claims. This left a balance in his hands of less than the claim of Pickering *et al.*, being about $4,000. The controversy thus became narrowed to the validity of their execution and their right to this balance as against the complainants. The facts as stated, all appeared by the bill and answer, no depositions being taken on either side. The complainant filed a list of exhibits setting forth the judgments recovered by them against J. F. Clements & Co., since the filing of the bill.

*Reed*, for the complainants.

The taking of the bond by the sureties was void under our insolvent law, *Rev. Code* 1852, *p.* 486, *Sec.* 3, having been given by Clements and Prouse while insolvent. The judgment, therefore, being contrary to the Statute, is void. *Bailey vs. Burton*, 8 *Wend.* 339 ; *Twyne's case*, 1 *Sm. L. Cas.* 1.

The use, by the firm, of the funds collected by Clements, did not make the sureties creditors *of the firm;* nor were the sureties privies to the appropriation of the money collected by Clements, it was his money, no matter whence derived, not theirs. The firm was already insolvent when the money was used, and had been shut up by the Sheriff. These complainants were creditors for grain furnished in the course of the firm's business,—the very grain sold by the Sheriff.

Upon these facts the bond was without consideration, and void. *Waters vs. Comly,* 2 *Harrington,* 131 ; *Am. Lead. Cas.* 77 ; *Coolidge vs. Melvin,* 42 *N. H.* 511, 532-3 ; *Parmlee vs. Eagan,* 7 *Paige* 610 ; *Jackson vs. Brush,* 20 *Johns.* 5.

The Court will not, against *bona fide* creditors, sustain a claim not certainly due, subject to a contingency. If sureties had escaped liability in the pending suit between the collector and themselves, the proceeds in the hands of the Sheriff would have been payable back to Clements and Prouse, to the defeat of their real creditors. The bond, at least, could not be legally given to the sureties until their liability became fixed, and some specific sum paid by them.

Courts of equity will not allow a mere process of a court of law to override the insolvent laws, and appropriate, entirely, partnership effects to the exclusion of *bona fide* creditors. *Mackey et al. vs. Cairns et al.* 5 *Cowen,* 547, 562.

Upon a charge of fraud the answer is not to be relied on as to any advances, but positive proof of the payment if the money is required. *Piddock vs. Brown,* 3 *P. Wms.* 288 ; *Glynn vs. Bank of England,* 2. *Ves. Sr.* 38. The bill charges the bond to be fraudulent, and the answer does not sufficiently meet it, not being specific. Nor does it show a liability from the firm to the sureties, the charge of the bill therefore must be taken as true, and the bond treated

as void by reason of fraud. *Boardman vs. Holloway*, 10 *Paige,* 223; *Prescott vs. Hayes*, 43 *N. H.* 593; *Sands vs. Codwise*, 4 *Johns.* 594; *Lore vs. Getsinger*, 3 *Halst. Ch.* 204; *Bailey vs. Burton*, 8 *Wend.* 339; *Murray vs. Riggs*, 15 *Johns.* 585.

*Fulton*, for the defendants.

There is neither allegation nor proof of the insolvency of the firm when the bond was given, nor even when the bill was filed. The debts of complainants were contracted in the ordinary course of business, for profit, without any alleged fraud on them. There is no special equity in their favor, while sureties are always favored in equity out of regard to the necessity for them which exists in society. But even if the equities were only equal, the defendants having the advantage at law, must prevail. *Caldwell vs. Bell*, 8 *Petersdorff* 697 ; *Adams' Equity*, 75—6.

There are several specific objections to the relief prayed.

1. There is no proof by the creditors of their debts except by Wharton. The bill alleges debts, the answers of the sureties and Prouse shew nothing, and that of Clements does not admit any, to the extent of proof, and denies as to three. The judgments, except Wharton's, are all recovered since the bill was filed. What is neither admitted nor denied must be proved. *Cochran vs. Evans*, 1 *Harring*, 200.

2. Every material allegation of the bill is expressly and positively denied, and in such case there can be no relief.

3. The sale by the Sheriff worked a dissolution of the partnership, as to all the effects sold, divesting the title of

the partners ; and left nothing when the bill was filed against which the claim of joint creditors could attach ; the property had passed to the purchaser and the proceeds to the execution creditor. The creditors cannot follow the proceeds as they might the goods, had they remained *in specie*, the execution having put the proceeds beyond their reach. A court of equity is not the forum for distributing or settling rights or liquidating claims to the assets of a dissolved partnership. The bond was legal in form, the execution regularly executed, and the funds, therefore, properly in the hands of the officer. *Ex parte Ruffin*, 6 *Ves.* 119; *Ex parte Williams*, 11 *Ves.* 3.

4. The bill must be dismissed because complainants are not execution creditors, having no lien on the property taken. A creditor can invoke the aid of equity only after his claim has been established at law. But this is not all, if the aid is sought with respect to particular effects, he must acquire a lien upon the property or shew a trust under which the proceeds are applicable. *Ex parte Ruffin*, 6 *Ves.* 119 ; *Ex parte Williams*, 11 *Ves.* 2 ; *Brinkerhoff vs. Brown*, 4 *Johns. Ch.* 671.

5. The money, being a trust fund, might have been followed by the Government, and the firm receiving it became legally liable to it ; and the sureties having paid it, are subrogated in equity (though not at law) to the same right, and consequently might accept the bond. *Walter de Chirton's case, Dyer* 160; *Lane vs. Dighton*, 1 *Amb.* 409 ; *Colly on Partn. sec.* 391 ; *Burge. on Suretyship*, 499; *Stone vs. Marsh*, 6 *B. & C.* 551 ; *Oliver vs. Piatt*, 3 *How. S. C.* 333 ; *Whitaker vs. Brum*, 16 *Wend.* 505 ; *Hogan vs. Reynolds*, 8 *Ala.* 60 ; *Hutchinson vs. Smith*, 7 *Paige* 26.

6. The firm, under the circumstances, had a right to make this a partnership debt, and did so. This is a consequence of the position that the money could be followed.

And further, if there were no legal obligation which would sustain a suit, nevertheless the moral obligation was a sufficient consideration to support the bond, if given.

(1.) Partners may dispose of their assets as they please; the joint creditors have no remedy unless they have acquired a lien. *Colly. on Partn. secs.* 902-4; *Ex parte Ruffin,* 6 *Ves.* 119; *Ex parte Williams,* 11 *Ves.* 2.

(2.) The equity of joint creditors as against a separate creditor, is not directly against the partnership property, but is incidental to the equity of the partners as between themselves, *i. e.,* to have joint assets applied to joint liabilities. *Snodgrass' Appeal,* 1 *Harris* 471-4; *Baker's Appeal,* 9 *Harris* 79-82; *Sidgel vs. Chidsey,* 4 *Casey,* 279; *Hutchinson vs. Smith,* 7 *Paige* 26.

7. Debtors, whether solvent or insolvent, may lawfully prefer creditors. It is in some cases reasonable and necessary. *Fox vs. Hanbury, Cowp.* 445; *Cock vs. Goodfellow,* 10 *Mod.* 489; *Williams vs. Brown,* 4 *Johns. Ch.* 682; *McDermutt vs. Strong,* 4 *Johns. Ch.* 687; *McMenomy vs. Murray,* 3 *Johns. Ch.* 435; *McMenomy vs. Roosevelt, Ib.* 446; *Riggs vs. Murray,* 15 *Johns.* 583; *Glenn vs. Grover,* 3 *Md. Rep.* 212; *Tunnell vs. Jefferson,* 5 *Harring.* 206.

8. The defendants, having obtained such preference, are entitled to the fruits of their execution. *Cursus Cancellaria* 10; *Ad. Eq.* (159); *Caldwell vs. Bell,* 8 *Petersdoff* 697; 2 *Spence Eq. Jur.* 733; *Gelston vs. Codwise,* 10 *Johns.* 507; *Backus vs. Murphy,* 3 *Wright* 397-401.

THE CHANCELLOR.—

This bill contests the validity of a judgment confessed by the firm of J. F. Clements & Co., to indemnify the defendants, who were sureties of Clements as deputy

collector of internal revenue, against such loss as might accrue to them from his conversion of the public revenue to the use of the firm.

The purpose for which the judgment to the sureties was confessed did not appear by testimony, but it is set forth in the answer. Notwithstanding an objection to the contrary, the answer is, on this point, responsive, and there is no evidence against it. I, therefore, have accepted its statements as part of the case above set forth. The complainants' counsel insisted that because the bond is charged to be fraudulent, the defendants' denial by answer should not be admitted, but that only by testimony can a sufficient consideration be shewn. To this point cases in 3 *P. Wms.* 228, and 2 *Ves. Sr.* 516 were cited; but they do not sustain it. The case in *Ves. Sr.* bears no relation to the subject. In 3 *P. Wms.* 228, it was held that *prima facie*, a bond or mortgage was evidence of a debt, but that, where there were "manifest signs of fraud," *i. e.*, signs manifest by some evidence supporting the charge in the bill, the obligee should be put to the proof of actual consideration or payment.

This decision refers to the *onus* and not to the *mode* of proof. It holds the obligee in a bond which has been by evidence brought under suspicion of fraud, to shew a sufficient consideration for the bond, but it does not decide that the consideration, when required to be shewn, may not be proved as any other fact in issue might be, *i. e.*, by answer, if responsive and uncontradicted, as well as by any other kind of evidence. On the other hand, there are decisions directly to this point, which holds that the answer, if responsive, is evidence, although against a bill charging fraud, and may, if not overcome by counterproof, establish the defense. 2 *Dan. Ch. Pr.* 984, *note*; 8 *Gill & J.* 171; 1 *Wend.* 583, 596, *and* 619; 3 *Paige,* 557.

We now reach the main subject of controversy, which embraces two objections taken to the validity of the judgment confessed to the defendants.

The first and principal objection, taken in argument, is that the judgment was without consideration to the firm of J. F. Clements & Co., and was void as against the partnership creditors. That it was without consideration has been urged on the ground that the firm did not, by receiving and using the money collected by Clements, and for the due application of which the sureties were bound, incur any partnership debt or liability *to the sureties*, forming a consideration for the bond ; that, on the contrary, the firm as it received the money from Clements, became debtor to him alone ; that the only remedy of the sureties was against Clements ; that between the firm and the sureties there was no privity.

The fallacy of this objection lies in its assuming that the public revenue converted to the use of the partnership was the money of Clements : as if he had *borrowed* a sum of money *on his own credit* and put it into the business ; in which case, unquestionably, the firm would have been indebted to him only, and not to the person from whom he borrowed. So, if the collection of the public revenue were farmed out to a collector, who, paying to the Government a stipulated sum, should become entitled to collect the taxes for his reimbursement ; in such case, the taxes, when collected, would be his own property, and if put into the business of a partnership of which he might be a member, would create no liability on the part of the firm, except to himself. But in the present case, the money used by J. F. Clements & Co. was in Clements' hand, as the mere agent of the Collector of Internal Revenue, *whose money it was*, that is, as between the collector and Clements, though ultimately it was payable to the United States Government. It was a trust fund. Now it is a rule, that the rights of a *cestui que trust* adhere to the trust property or fund, and follow it into whosesoever hands it may come, except those of a *bona fide* purchaser for value and without notice. It was forcibly said by Lord Ellenborough, that "an abuse of trust can confer no rights on

28

"the party abusing it, nor on those who claim in privity with him:" 3 *M. & S.* 574. If the subject-matter of the trust be lands or chattels, such as can be identified, they may be followed and recovered *in specie*; if it be money, that is, converted by the trustee, whoever receives it with knowledge of the trust, or without a valuable consideration, becomes a debtor to the *cestui que trust.* Or, if the money has been used in the purchase of property, say of lands, the *cestui que trust* may, at his election, either take the property (2 *Dyer* 160; *Amb.* 409;) or he may follow the money into the hands of the vendor, holding the vendor as his debtor. This is a settled rule, founded upon the most obvious necessity, that of preventing the facilities there would otherwise be given for the fraudulent conversion of trust property. The rule is enforced at law whenever the circumstances raise a legal cause of action. In courts of equity, relief is given universally. It is one of the various applications of the equitable doctrine of implied trusts : See at large 2 *Story's Eq. Jur.,* §§ 1257–8; *Lewin on Trusts* (201–2) 24 *Law Lib.*; *Oliver vs. Piatt,* 3 *How. S. C. Rep.* 333. Among the cases to which this rule has been applied, there are some in which the party receiving trust-money, knowing it to be such, has been held liable as a debtor directly to the *cestui que trust.* Some of these may be noticed.

In *Smith vs. Jameson,* 5 *T. R.* 601, Robert Jameson, while a partner in business with Thomas Jameson, was also one of the assignees in bankruptcy of Lewis and Potter. As assignee of the bankrupt he received 2563*l.*, which he brought into his partnership with the privity of his partner Thomas Jameson. The partnership was dissolved, and all of its effects and credits assigned to Robert, he assuming the debts. After this a commission of bankruptcy issued against Robert and Thomas Jameson, and Robert was removed, as one of the assignees of Lewis & Potter. His co-assignees then claimed to prove the 2563*l.* against the estate of Robert and Thomas Jameson under the commis-

sion of bankruptcy against them. The Lord Chancellor directed this action at law to try the question whether the assignees of Lewis & Potter could maintain an action against the partnership of Robert and Thomas Jameson for the sums received by Robert, as assignee of Lewis & Potter's estate, and appropriated by him to his own partnership. It was *admitted* that the partners, by receiving the money, *became indebted to the estate of Lewis & Potter*, but insisted that the assignment of the partnership effects by Thomas Jameson to Robert, while the latter continued to be an assignee of Lewis & Potter, was discharged. This objection the court overruled, and the assignee recovered.

In *Stone vs. Marsh*, 6 *B. & C.* 551, one of several trustees of stock under a will, by means of a forged power of attorney, sold the stock, and the proceeds were carried into the business of a firm of which he was a partner. Upon an issue out of Chancery to inquire whether the partnership which received the money was indebted for it to the trustees, it was so held by Lord Tenterden, who also seems to have considered it immaterial whether or not the other partners were ignorant of the fraud.

In *Hutchinson vs. Smith*, 7 *Paige*, 26, one Smith, the treasurer of Monroe county, commencing business in January 1827, used money in his hands as county treasurer, in the purchase of a stock of goods. Soon afterwards he took into partnership with him, Phelps, whose interest in the stock and business, it was agreed, should be estimated from January. Phelps entered the firm, knowing that the county funds had been put into the business. In July, Smith died. The firm was then, as it was afterwards ascertained, insolvent. Phelps, the surviving partner, assigned all the partnership property to a creditor for the payment of the debts, preferring some ; and among other preferred debts was the obligation to the county, which was included at the instance of the sureties on the treasurer's bond. The funds assigned proving insufficient to

pay all the debts of the firm, the non-preferred creditors filed their bill to set aside the assignment, and, among other grounds, objected that the debt due to the county was the private debt of Smith, for which the partnership was not liable. But the Vice-Chancellor and, on appeal, the Chancellor, held it to be a partnership debt, and properly provided for by the assignment.

In *Richardson vs. French,* 4 *Metc.* 577, the same principle was applied to the case of a partnership, into which one of the partners, being also an administrator, brought funds from the estate of his intestate. See further, *Collyer on Partn.* § 391, and cases cited.

We see, then, that the firm of J. F. Clements & Co., by using, with the knowledge of both partners, the funds held by Clements as deputy collector, became debtors to the United States collector. A bond of the firm securing the money to *him,* would have been, unquestionably, valid as a partnership obligation. Next, we inquire, how stood the sureties ? Did there arise out of this transaction any liability on the part of the firm to them, forming a sufficient consideration for this judgment ? Now, had the sureties before taking the judgment (as they have since done) made good, to the United States collector, Clements' defalcation, they would have succeeded, in equity, to the exact position of the collector, before stated, as a creditor of the firm. In equity, sureties, upon payment of the debt or performance of the duty of their principal, are subrogated to all rights, securities, and remedies of the creditor as means of indemnifying themselves, except only that under the English decisions, sureties paying the debt cannot take an assignment of the instrument upon which they are bound ; which right, however, is conceded to them under the American decisions, and in this state it is given by statute. *Rev. Code. Chap.* 65. But when this judgment was confessed, the sureties had paid nothing, and whether, in fact, they would sustain any loss, was con-

tingent, until the collector should elect to take his remedy against them rather than against Clements or the firm. Could they, in that position, take a bond of indemnity? And, if any, could they take an absolute bond for the payment of money, such as the bond upon which this judgment was confessed ?  There can be no doubt on these points.  By force of the defalcation alone, and before any payment was made by the sureties, *their* liability to pay became fixed, although whether this liability would be enforced might for a time remain uncertain.  So also, the firm of J. F. Clements & Co., by the very act of converting to its own use the trust-funds for which the sureties were bound, incurred a liability directly to the sureties ; a liability, first, to answer to them in the event of their loss, according to the equitable doctrine of subrogation, in the same manner and to the same extent in which they stood responsible to the collector ; and, second. (as it seems to be now settled,) even before any loss had accrued to the sureties, the firm might have been brought into a court of equity and compelled to exonerate the sureties by paying the debt: 1 *Story Eq. Jur.*, §§ 327, 639, 730 ; Lord Chancellor in *Nesbit vs Smith*, 2 *Bro. C. C.* [582] *and note (a)* ; *Cox vs. Tyson*, 1 *Turn. & Russ.* 395 ; *Hays vs. Ward*, 4 *Johns. Ch.* 132 ; 1 *Lead. Cas. in Eq.* 87.

Such is the right of a surety as against his principal. The same right these sureties had against J. F. Clements & Co., because the firm, as well as Clements, individually, were bound to exonerate the sureties.  Thus the firm were, by the very act of using this money, brought under an obligation to indemnify the sureties ; not only to make good in the future such loss as might in the event be sustained, but to exonerate the sureties, if so required, at once.  Clearly, then, it was both their right and duty, promptly, to indemnify the sureties.  In what form, we next inquire, might this be done ?  Might it be an absolute bond for the payment of a sum of money estimated as sufficient to cover the loss ?  This was controverted in the

argument.   But the validity of a money-bond as a mode of indemnifying sureties, has been affirmed by the Court of Errors and Appeals in *Tunnell vs. Jefferson,* 5 *Harring.* 206.   There, a judgment-bond for $15,000 had been given by Tunnell to certain trustees, in trust, to apply the proceeds towards indemnifying the sureties of Tunnell as administrator of Miers Burton, deceased, and as guardian of his children.   The Chancellor (Johns) sustained the precise objection here made, that sureties, before actual payment of the debt for which they are bound, cannot take as an indemnity an absolute bond for the payment of money, but only a bond with a collateral condition to indemnify them, upon which judgment might be entered by virtue of a warrant of attorney, so as to effect a lien on real estate, but without the power to take execution until the damages should be ascertained through a verdict or an inquisition upon breaches of condition assigned.   The Court of Errors and Appeals held the contrary, sustaining the right of the surety to take for his indemnity an absolute bond before payment of the money or performance of the duty for which he stood liable ; before even the time fixed for payment or performance, by the principal, had arrived.   That decision is conclusive.   See, also, *Toissant vs. Martinnant,* 2 *T. R.* 100 ; *Penney vs. Foy* 8 *B. & C.* 11, 16.

What remedy a court of equity would afford to compel sureties, holding such a bond, to pay the debt against which they are indemnified, before taking the proceeds of an execution under the bond, or to compel them to refund after having taken the proceeds, if they should not ultimately be damnified, is a question which does not affect the original validity of an indemnifying bond ; nor can any such question arise here since these sureties have already sustained the loss against which this bond was executed to indemnify them.

The second objection to this bond was, that it gave a preference to the sureties against other creditors, in

contemplation of the insolvency of the firm, and, there-
fore, that it is void under our statute of insolvency. *Rer.*
*Code, Chap.* 132. *Sec.* 4. The statutory provision supposed
to be violated, is in these words ; "If any person in
"contemplation of insolvency, or in contemplation of
"taking the benefit of any of the insolvent laws of
"this State, shall make an assignment of his estate or
"effects for the benefit of creditors, and by such assign-
"ment, either under its provisions or otherwise, shall prefer
"any creditor to others, or shall in or by such assignment
"secure or pay to any creditor a greater proportion of his
"debt or demand than shall be paid or secured to all his
"creditors, every such assignment, so giving a preference,
"shall be void, &c."

The prohibition of this clause against a preference
among creditors applies only to cases in which an assign-
ment for the benefit of creditors is made, whether made
"in contemplation of insolvency or in contemplation of tak-
"ing the benefit of the insolvent laws." Both the terms and
the policy of the Statute are clear ; what it requires is the
equal distribution among all creditors of the debtor's effects,
*under an assignment made for the* benefit of creditors, without,
however, restraining the debtor, *if he makes no assignment*,
from exercising his general right to prefer one creditor, to
others, even though he may be in failing circumstances,
or though the preference be given in direct contemplation
of actual insolvency.   Where no assignment is made, the
law puts the creditors upon their diligence and gives to
each the benefit of his diligence. This construction of the
law has been uniformly acted upon since its passage in
1826, and has been several times adjudged by the Court
of Errors and Appeals. In *Newells vs. Morgan*, 2 *Harring.*
228, the same objection was taken to a judgment given to
a creditor in contemplation of insolvency. The judgment
was sustained though without any notice taken by the
Court of the objection.   In *Waters vs. Comly*, 3 *Harring.*
117, the subject was more fully considered.   There, a firm,

being indebted and in failing circumstances, executed a judgment bond in a large amount exceeding their assets. It was taken in the name of one creditor but in trust for certain preferred creditors named in a schedule.  The Chancellor, and on appeal, a majority of the Court, held the judgment to be an evasion of the Statute, on the ground that a judgment, so given, covering all the debtor's assets, and in trust for the benefit of a number of preferred creditors, who were not parties to it, nor cognizant of it, was equivalent to a formal assignment with preferences given under it ; but the Court did not deny the validity of preferences given by debtors in the ordinary mode.   The construction given to this Statute, in the elaborate opinion of Judge Harrington, has always been held and acted upon, and on the general question it was not controverted by the opinion of the majority of the Court in that case.   In *Tunnell vs. Jefferson*, 5 *Harring.* 206, the Statute received the same construction, which now must be taken to be settled and beyond discussion.   The case before us is the ordinary one of a debtor's preferring certain creditors without, however, making any assignment for the benefit of his creditors at large, and therefore such preference, even though given in contemplation of insolvency, is not forbidden by the Statute.

It results that the judgment confessed by J. F. Clements & Co., to the sureties of Clements, is valid as an obligation of the firm, and the defendants are entitled against the partnership creditors to the fruits of their execution.

Bill dismissed, and the injunction dissolved.

NOTE.—This case is also reported in 8 *Am. Law Reg.* (*N. S.*) 299.