EDWIN E. MONTELL *et al.*

*vs.*

NEW CASTLE IRON & STEEL CO. *et al.*

New Castle, February T. 1882.

*Assignment for creditors; necessity of creditor's assent.*

1. A voluntary assignment to a trustee for benefit of creditors is void as against creditors not assenting thereto, in the absence of statutory provisions making it valid.

2. Delaware Act of March 25, 1875, does not validate assignments of creditors which are otherwise invalid nor alter the prior law upon that subject, but simply provides a course of procedure in case a valid assignment has been effected.

PETITION FOR RULE.—This is a petition for rule upon assignee for creditors to show cause why proceeds in his hands should not be paid to petitioner.

On October 24, 1881, the New Castle Iron & Steel Company made an assignment of its property and effects for the benefit of its creditors to Alfred S. Elliott and on the same day the Chancellor appointed Edward Betts and Charles M. Pusey as appraisers. On September 23, 1881, Edwin E. Montell had brought an action against the assignor in the Circuit Court of the United States for the District of Delaware and the 25th day of October he recovered a judgment in such action for $847.82 besides costs. He issued execution and levied on the property of the company and the same property was levied upon under executions upon judgments in favor of Grubb & Sons and Edward S. Davies. On the 15th of October, 1881, the company had attempted to make an assignment for the benefit of its creditors to Edward Betts, but it was not perfected. The creditors had no notice of the assignment and never concurred therein. The property was

afterwards sold without prejudice by agreement of the parties. Upon this state of facts the creditors prayed for a rule upon the assignee to show cause why the assignment should not be declared invalid, and why they should not receive the proceeds of the sale.

*Benjamin Nields*, for Edwin E. Montell.
*George Gray* and *Anthony Higgins*, for the other judgment creditors.
*J. H. Hoffecker, Jr.*, for the assignee.

THE CHANCELLOR.—It is agreed that on the 24th day of October, 1881, the New Castle Iron & Steel Company, then being indebted to divers persons and firms and among others to Edwin E. Montell, Grubb & Sons, and Edwin S. Davies, made a voluntary assignment of all its effects to Alfred S. Elliott in trust to sell and dispose of the same and to collect and recover all the outstanding claims and debts due the said company and from the proceeds, after deducting his reasonable costs and charges, to pay the creditors of the said company in full, if the assets realized should be sufficient, but if not sufficient, to pay the demands of said creditors *pro rata*, without preference as between individuals. Alfred S. Elliott, the assignee, accepted the trust and entered upon the discharge of his duties under it and filed with the Register in Chancery an inventory of the effects assigned on the same 24th day of October, 1881, accompanied by his affidavit, and gave bond with sureties, and on the same day the Chancellor appointed appraisers, who returned their appraisement on the 26th day of October, 1881.

It is further agreed that the creditors of the New Castle Iron & Steel Company had no notice or knowledge of the said assignment at the time of its execution and that neither Montell, Grubb & Sons, nor Edward S. Davies have ever given any assent thereto. It further ap-

pears as admitted that the said Montell, Grubb & Sons,. and Davies have severally recovered judgments on their respective claims in the Circuit Court of the United States for the District of Delaware at the October Term, 1881, of said court, on the 25th day of October, and subsequently caused writs of *fieri facias* to be issued which were delivered to the marshal who levied upon the goods and chattels assigned as aforesaid, as the property of the. said company and advertised them for sale in execution of the writs. Pending the proceeding the assignee wrote to the creditors, suggesting that the interest of all parties would be best promoted by permitting them to dispose of the goods at private sale and obtained the consent of the said execution creditors among others, with a reservation of their rights, the complainants expressly stipulating that their status was not to be affected but that the fund should be held subject to the determination and distribution of a court of equity upon all the facts.

By this sale therefore the goods have simply been converted into money, without altering the position of the parties in relation to the right thereto.

Upon the facts the case before me is reduced to the consideration of two questions: (1) Whether the assignment by the New Castle Iron & Steel Company taken irrespective of the Act of the General Assembly passed March 18, 1875 (15th Vol. 311), was sufficient to vest the property therein mentioned in Alfred S. Elliott, the assignee, so as to protect it against creditors neither parties nor privies to the said assignment even consenting thereto; (2) whether if not otherwise protected the said Act of March 25, 1875, has the effect to render the assignment valid, so as to have that operation.

I. In determining the first question it seems to me that this case falls clearly within the principle announced in *Waters* v. *Comly*, 3 Harr. (Del.) 117, and whatever might

have been my opinion of the matter had been *res integra.* I am bound by the judgment of the Court of Errors and Appeals. In that case Waters and Laird, being in failing circumstances, executed a bond to McMathin, Burgess, and Kelly for a large sum of money, exceeding their assets, upon a parol trust to pay the creditors mentioned in a schedule, Kelly, one of the assignees, being a creditor to the amount of $400.

It is manifest from the statement of facts that there was an attempt to prefer creditors, in which it differs from the case now before me, but the decision of the court did not proceed wholly nor mainly upon that consideration. It was an appeal from Chancery and the Chancellor in discussing the meaning of the act concerning fraudulent assignments had said: "It is apparent this act was not made to prevent assignments but to prevent persons in contemplation of insolvency, either by assignment or otherwise, doing any act to prefer creditors." This view was not sustained by the Court of Errors and Appeals. On the contrary, it was distinctly announced by that court, and reaffirmed in subsequent cases, that when no assignment is attempted the preference by a debtor of particular creditors, either by payment or through the instrumentality of trade, is not forbidden even if done in contemplation of insolvency.

In the case of *Wharton* v. *Clements*, 3 Del. Ch. 209, *Chancellor* Bates construes the case of *Waters* v. *Comly, supra*, to announce the conclusion of the majority of the court on this point, that the bond being given in an amount exceeding the whole of the property of the debtor was equivalent to and a substitute for a formal assignment and as such was an evasion of the statute.

The decision in *Waters* v. *Comly*, however, was not based entirely nor principally on that ground, but on another in which the whole court concurred and which was entirely beside any question of preference of creditors.

The ground was the invalidity of a voluntary assignment executed by a debtor to a trustee of his own selection without the privity or assent of his creditors, as against such creditors.

On this subject the enunciations of the judge are harmonious and unequivocal. They all hold, in conformity with *Garrard* v. *Lord Lauderdale*, 2 Russ. & M. 451; *Bill* v. *Cureton*, 2 Myl. & K. 503,—and the line of cases announcing the same principle, that a deed of assignment operates merely as a power to the trustee, revocable by the debtor, that the character of *cestui que trust* never existed between the creditor and the trustee but that the debtor himself was the only *cestui que trust*, having in him the whole beneficial interest—that the arrangement was one wholly for the convenience of the debtor and that the creditors were without remedy against the nominal trustee either at law or in equity.

Such being the judgment of the highest court of this state it is binding upon me, and in my opinion it clearly embraces the case of this assignment now under consideration.

II. I cannot see that the matter is helped by the Act of March 18, 1875. That act nowhere professes to declare what shall constitute a valid assignment, but only prescribes that when a voluntary assignment is made certain things must be done as therein specified. Now this must be construed to mean an assignment not prohibited by law and which would otherwise be unimpeachable. That this must be the meaning is manifest from the phrase "in trust for his creditors or some of them." Now were the construction to be given that this act validated an assignment because its provisions were complied with, it is clear that such construction would repeal the statute prohibiting a preference of creditors by a debtor in contemplation of insolvency, for the act speaks expressly of

a partial as well as of a general assignment and of an assignment for the benefit of particular creditors in exclusion of others.

The statute must be read in the light of the purpose for which it was enacted, to wit, the security afforded both to the *cestui que trust* and the assignor, by the bond of the trustees, the inventory and appraisement and the supervisory control of the chancellor, and not as validating assignments otherwise illegal, or as in any wise altering existing laws regulating the capacity on the part of debtors to create such trusts or as declaring the effect of such trusts when attempted to be made between the debtor and his voluntary assignee without the privity or assent of his creditors.

*Decree accordingly.*