JOHN CROSBY BROWN, *et al.*, trading as BROWN BROTHERS & CO

*vs.*

WILMINGTON ABND BRANDYWINE LEATHER COMPANY, WILLIAM T. LYNAM, Receiver of Wilmington and Brandywine Leather Company, WILLIAM T. LYNAM, Trustee, THE NATIONAL BANK OF WILMINGTON AND BRANDYWINE, G. W. BAKER MACHINE COMPANY, successor to G. W. Baker, trading as G. W. Baker & Company, THE ABE STEIN COMPANY, EDGAR LOEWE, GOAT AND SHEEPSKIN IMPORT COMPANY, LTD., INTERNATIONAL HIDE AND SKIN COMPANY, JAMES BRADFORD CO., GEO. W. BUSH & SONS COMPANY, JOHN M. HARPER, trading as Jno. M. Harper & Company, CHARLES WARNER COMPANY, THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS' BANK OF THE STATE OF DELAWARE (Branch at Wilmington) and ANTONIO MARANO.

*New Castle, Jan.* 25, 1910.

A corporation made an assignment of its finished manufactured product, book accounts and bills receivable, in trust to sell the assets and divide the proceeds ratably among such creditors as should become parties thereto and accept their shares in full of their claims. Prior to the execution of the assignment by the last creditor agreeing to it, the corporation and such creditors agreed that the corporation should transfer to the trustee the factory and machinery then owned by it to liquidate the claims of such creditors, unless the corporation should reorganize within a specified time. The appointment of a receiver prevented the

favored creditors from obtaining the benefit of this agreement. The corporation was hopelessly insolvent, and knew it, and had no real intention of continuing business in its name, or for any appreciable length of time. *Held*, that the assignment and agreement must be construed as constituting single assignment, within *Rev. Code* 1893, *p.* 960, *c.* 132, § 4, prohibiting preferential assignments in contemplation of insolvency.

Under *Rev. Code* 1893, *p.* 960, *c.* 132, § 4, providing that assignments in contemplation of insolvency for the benefit of preferred creditors shall be void, an assignment by a corporation in failing circumstances· of its property for the benefit of certain creditors to the exclusion of the others is void.

An assignment by a failing manufacturing corporation of all its finished product, book accounts and bills receivable, in trust to sell the assets and distribute the proceeds among such cerditors as should become parties thereto and accept their shares in full of their claims, is not a sale, but is an assignment, within *Rev. Code* 1893, *p.* 960, *c.* 132, § 4, forbidding preferential assignments for benefit of creditors, where, even if the agreement of the assenting creditors to accept their *pro rata* share in full of their claims was a sufficient consideration for the property transferred, there was no such agreement in fact.

A statute must be construed reasonably according to its language, having regard for its manifest purpose, the mischief to be remedied, or the wrong to be cured; but where a statute is plain and within the legislative power it acts as its own interpreter.

The word "assignment," in *Rev. Code* 1893, *p.* 960, *c.* 132, § 4, providing that an assignment for the benefit of certain creditors by a person in contemplation of insolvency shall be void, does not contemplate only cases where the entire assets of the debtor are assigned, but also where a part is assigned, and the effect is to prefer any creditor to others, or secure or pay to any creditor a greater proportion of his debt or demand than to all the creditors; the object of the statute being to prevent any such preference, though it does not mean that a failing debtor may not honestly prefer a *bona fide* creditor .by giving a bond or by making a *bona fide* sale.

An assignment by a failing corporation of practically all of its property, in trust to sell the property and pay the proceeds ratably to such creditors as shall become parties thereto and accept their shares in full of their claims, is void, within *Rev. Code* 1893, *p.* 960, *c.* 132, § 4, making assignments for benefit of certain creditors by a debtor in contemplation of insolvency void.

The fact that an assignment by a corporation of its property in trust for creditors becoming parties thereto makes no provision for the return to the debtor of any surplus after the payment of such creditors does not prevent the assignment from being an assignment for the benefit of creditors, within *Rev. Code* 1893, *p.* 960, *c.* 132, § 4, making assignments in contemplation of insolvency void, where it was known to all the parties that there could not possibly be any surplus.

A transaction constituting an assignment in any form, including a transfer to a third person in trust to hold and dispose of property for the benefit of the creditors of the assignor, which meets the other conditions of the prohibition of *Rev. Code* 1893, *p.* 960, *c.* 132, § 4, is within the statute.

BILL IN EQUITY. The bill alleges that on August 31st, 1907, the Wilmington and Brandywine Leather Company assigned all of its manufactured stock, book accounts and bills receivable to William T. Lynam, as trustee, to sell and collect and distribute the proceeds thereof among "such creditors of the said company as shall become parties hereto, by signing this Agreement."

On September 14th, 1907, and before all of the creditors who became parties to this agreement had executed it, the company by another instrument assigned all of its real estate and machinery to Lynam, for the purpose of selling them and distributing the proceeds thereof among the same creditors, upon the happening of certain contingencies. Subsequent to the execution of the agreements, and before the happening of the contingencies provided for in the second agreement, Lynam was appointed receiver for the company on the ground of its insolvency, and, as such, took possession of said real estate and machinery. The complainants were creditors of the company, but were not parties to either agreement, and filed this suit for the purpose of having the assets of the company, mentioned in the first agreement, transferred from the trustee to the receiver, for the benefit of all of the creditors of the company.

The Chancellor having certified his disqualification to adjudicate this cause, it was heard by the Chief Justice on demurrers to the bill, and the facts material to the decision thereof sufficiently appear in the opinion.

*Ward & Gray* for the complainants.

The bill sets up facts to show that the title of Lynam, Trustee, to the property mentioned in the agreements, is not sufficient in law or equity to remove it from the control of the Court appointing said receiver, or of such a nature as to deprive creditors generally, of the leather company, from participating in the same. In support of this contention, the bill sets forth that the assignment under which Lynam, Trustee, took control of the assigned assets of the leather company, is null and void by reason of its conflict: (1) with *section* 4, *chapter* 132, *Revised Code*, of the State of Delaware as amended to 1893; (2) with the *Statute of* 13 *Elizabeth;* (3) with *chapter* 187, *volume* 15, *Laws of Delaware;* (4) with *chapter* 387, *volume* 22, *Laws of Delaware.*

*Section* 4, *chapter* 132, *Revised Code,* (1893) has been applied to varying states of facts in several cases by the Superior Court, the Court of Chancery and the Supreme Court of this State. *Hutchinson v. Gordon,* 2 *Harr.* 179; *Waters, et al., v. Comly,* 3 *Harr.* 117; *King, et al., v. Johnson,* 5 *Harr.* 31; *Humphries, et al., v. Smith,* 4 *Houst.* 9; *Stockley v. Horsey, et al,.* 4 *Houst.* 603; *Slessinger v. Topkis,* 1 *Marv.* 140; *Wharton, et al., v. Clements, et al.,* 3 *Del. Ch.* 209; *Montell v. New Castle Iron and Steel Co.,* 6 *Del. Ch.* 364.

The averment in paragraph 6a of the bill, that the assignments were made for the purpose of hindering and delaying the complainants in the collection of their claim against said leather company, is intended to bring the assignment in question under the prohibitions of the *Statute of* 13 *Elizabeth. Logan, et al., v. Brick, et al.,* 2 *Del. Ch.* 206; *May on Statutes of Elizabeth,* (*Blackstone Co., ed.* 1887) 14.

*Chapter* 187, *Volume* 15, *Laws of Delaware,* provides the only statutory method, under the laws of Delaware, to make a valid assignment for the benefit of creditors. It covers all voluntary assignments of the whole, or any part, of the debtor's estate, and for the benefit of all, or for some only, of the creditors. That the first agreement was essentially a voluntaty assignment, plainly appears from the first clause thereof, where the parties of the third part are named as "such creditors of

said company as shall become parties hereto by singing this agreement as hereinafter provided for." It is contended that such an assignment in no way bound any creditor not executing the same, or prevented him from participating adversely in the application of the assets of the assigning company for the payment of his debt. *Montell v. New Castle Iron and Steel Co., supra.*

Paragraph 6b of the bill of complaint plainly charges the violation of *Chapter* 187, *Volume* 15, *Laws of Delaware,* in every particular, by the Trustee, and, as said statute is the only statute under which such an assignment could have any validity, it is submitted that such assignments confer upon said trustee, or the creditors for whom he is trustee, no rights whatsoever to the fund resulting from said assignment, and that nothing in said assignments can preclude this Court from requiring said trustee to turn over to the receivership the funds in question.

There is nothing in *Chapter* 387, *Volume* 22, *Laws of Delaware,* to prevent its application to this case. It simply provides "that a sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business or a sale of an entire stock of merchandise in bulk will be presumed to be fraudulent and void as against the creditors of the seller," unless certain things are observed. The bill plainly alleges that the manufactured stock "constituted the stock of merchandise of said Wilmington and Brandywine Leather Company;" that said sale of all finished leather belonging to said company was a sale otherwise than in the ordinary course of trade in the regular and usual prosecution of the business of said company, and a sale of the entire stock of merchandise in bulk, within the meaning of said statute.

*Saulsbury, Ponder & Morris* for defendants, G. W. Baker Machine Co., Abe Stein Co., Edgar Loewe, Goat & Sheepskin Import Co. and John M. Harper.

The agreement of August 31st, 1907, is not invalid as contrary to the provisions of *Section* 4, *Chapter* 132, *Revised Code*

(1893), because this act has been construed by the Court of Errors and Appeals of Delaware to invalidate agreements by which persons, in contemplation of insolvency, assign their entire estate for the benefit of creditors, thereby giving a preference to such creditors, and, therefore, does not apply to a case where part only of the estate was so transferred. *Waters v. Comly*, 3 *Harr*. 117; *Tunnell v. Jefferson*, 5 *Harr*. 206; *Wharton, et al., v. Clements, et al.*, 3 *Del. Ch*. 209; Montell *v. New Castle, &c., Co.*, 6 *Del. Ch*. 364; *Stockley v. Horsey*, 4 *Houst*. 603.

This agreement lacks some of the essentials of an assignment for the benefit of creditors, such as is technically known to the law: (1) There was no provision that any surplus remaining in the hands of the trustee, after payment of the creditors, should be returned to the assignor, but, on the other hand, this agreement expressly provided that all the personal property therein mentioned was accepted by the creditors in full liquidation of their claims. (2) The creditors released the assignor from all liability to make up any deficiency that might remain after the distribution of the fund arising from a conversion of the personal property covered by said agreement. This would not be true in a case of an assignment for the benefit of creditors. 4 *Cyc*. 222; *Smith, &c., Co. v. Carson, et al.*, 52 *Pac*. 880.

A debtor, under the laws of Delaware, may prefer creditors, and one of the methods of so doing is by transferring property to a third person in trust to hold and dispose of it for the benefit of the creditors. *Burrell on Assignments*, 108. An insolvent debtor may exercise this right of preference, not only in the form of actual payment of money to a particular creditor, but also in the form of assignment or appropriation of property, by either of the following methods:

1. By the transfer of property directly to the creditor.

2. By consenting to a transfer by operation of law, as by voluntarily confessing a judgment.

3. By transferring property to a third person in trust to hold and dispose of it for the benefit of the creditor. *Stevens v. Bell*, 6 *Mass*. 339; *Nostrand v. Atwood*, 19 *Pick*. 281.

The agreement of August 31st, 1907, was not an assignment contrary to *Section* 4, *Chapter* 132, *Revised Code*, but a payment by accord and satisfaction of the creditors therein mentioned. *Bartlett v. Rogers*, 3 *Sawyer* 62, *Fed. Cas.* 1079; *Wilkinson v. Inglesby*, 5 *Johns.* 386; *Eaton v. Lincoln*, 13 *Mass.* 425.

The agreements did not operate together as one agreement, because, (1) The parties to them were not the same; (2) the so called agreement of September 14th, 1907, was not effective or binding, either on the party making it, or on the persons for whose benefit it purports to have been made; it was unilateral and without valid consideration; it was *nudum pactum* and could not have been enforced; and (3) the agreement of September 14th, 1907, purports to have been after the agreement of August 31st, 1907, had been signed by some of the parties to it.

The agreement is not invalid and ineffective by reason of non-compliance with *Chapter* 187, *Volume* 15, *Laws of Delaware*, relating to assignments for the benefit of creditors. That Act imposes certain duties on the assignee, but imposes no penalty for failure to perform the duties referred to in paragraph 6b of the bill, and nowhere invalidates an assignment as a consequence of a failure to do the acts required to be done by the assignee. 4 *Cyc.* 229; *Moore, et al., v. Goodbar, et al.*, 49 *S. W.* 571; *Abbott v. Chaffee*, 83 *Mich.* 256; *Commercial National Bank v. Mosser, et al.*, 57 *Mich.* 386; *Fuller, et al., v. Hasbrouck, et al.*, 46 *Mich.* 78; *Easton v. Durland's, &c., Co.*, 40 *N. Y. Supp.* 283.

The Act of March 24th, 1903, relied on in the bill to invalidate the agreement in question, does not so operate, because it does not apply. This transaction was in no sense a sale. A money consideration is an essential element of a sale, and constitutes its distinguishing feature. 21 *Am. & Eng. Enc. L.* 463; *Williamson, et al., v. Berry*, 8 *How.* 505, 544; *Frost v. Erath Cattle Co.*, 17 *S. W.* 52; 1 *Benjamin on Sales*, § § 1 *and* 2.

The statute relating to sales in bulk applies to merchants only, and not to a manufacturer, and, therefore, has no application to the agreement in question. *Wright v. Hart*, 182 *N. Y.* 330; *Off v. Morehead*, 235 *Ill.* 40, 85 *N. E.* 264; *Block v. Schwartz*, 27 *Utah* 387, 65 *L. R. A.* 308.

*Robert H. Richards* for defendants Wilmington & Brandy-wine Leather Company, William T. Lynam, Receiver, William T. Lynam, Trustee, National Bank of Wilmington and Brandy-wine and Antonio Marano.

We contend that the agreement or writing referred to in the bill of complaint as "Exhibit B" is not an assignment for the benefit of creditors, or for any purpose. Taken in its broadest sense, it cannot be construed to be any more than an agreement on the part of the Wilmington and Brandywine Leather Company, in a certain event and upon a certain condition, to assign or transfer unto William T. Lynam, the trustee named in Exhibit A, certain property mentioned in Exhibit B, for the purpose of liquidating the claims of certain creditors mentioned in Exhibit A. That an agreement to assign in the future, in a certain event, or upon a certain condition, is not an actual assignment. Even if the event should transpire, or the condition should be fulfilled, upon which, under the agreement to assign, the party agreeing so to do becomes bound to make the assignment; nevertheless, the agreement to assign does not, by the fulfillment of the condition, or the happening of the event, *ipso facto*, become transformed into an assignment itself. By reason of the appointment of a receiver, Exhibit B became ineffectual, inoperative and nullified. It can, therefore, have no effect whatsoever as an existing, active and effectual instrument in this proceeding.

We contend that it appears conclusively from Exhibit A that it was nothing more nor less than a payment by the Wilmington and Brandywine Leather Company of the debts or claims, of certain creditors, therein specifically enumerated and set forth. While the bill of complaint formally avers that Exhibit A was made "in contemplation of insolvency," it is respectfully contended that it satisfactorily and conclusively appears from the bill that said Exhibit A was not made "in contemplation of insolvency," within the legal meaning of that phrase. 22 *Cyc.* 1262; *Buckingham v. McLean*, 13 *How.* 150; *Paulding v. The Chrome Steel Co.*, 94 *N. Y.* 334; *Bloodgood v. Beecher*, 35 *Conn.* 469; *Jones v. Howland*, 8 *Metc.* 377; *Arnold*

*v. Maynard*, 2 *Story* 349, 1 *Fed. Cas.* 561; *Hall v. Gaylor*, 37 *Conn.* 550.

The Courts of this State have uniformly, wherever they have directly considered, or indirectly adverted to the meaning of the words "his estate, or effects," held said words to mean the whole or all of the estate or effects of the person making the assignment. Applying this construction to Exhibit A, it conclusively appears from the bill that the Wilmington and Brandywine Leather Company assigned and transferred only a part of its estate, property or effects, and that after transferring and assigning the personal property mentioned in Exhibit A, the said company had remaining real and personal property of great value. It, therefore, appears that the averments of the bill do not sustain the charge contained in paragraph 6.

It is contended as a general proposition that an assignment for the benefit of creditors, if untainted by fraud, is valid at common law and cannot be avoided, except by statutory provision. This proposition is sustained by most, if not all, of the Delaware cases cited by the defendants, and by many cases in other jurisdictions. *Crocker v. Higgins*, 7 *Conn.* 342; *Howell v. Sebring*, 14 *N. J. Eq.* 84; *Other v. Smurthwaite, L. R.* 5 *Eq.* 84; *Wallingford v. Mutual Soc., L. R.* 5 *App.* 685; *Nichols v. Rogers*, 139 *Mass.* 146; *Fogg v. Blair*, 139 *U. S.* 118; *Knox, et al., v. Smith, et al.*, 4 *How.* 298; *Kittell v. Augusta, &c. Co., et al.*, 65 *Fed.* 859; *Butler v. Viele*, 44 *Barb.* 166; *Grove v. Rentch*, 26 *Md.* 367; *Ide v. Gray*, 11 *Vt.* 615; *Small v. Boudinot*, 1 *Stock.* (9 *N. J. Eq.*) 381; *Gilbert v. Lewis*, 1 *DeG. J. & S.* 38.

The agreement we are considering, being Exhibit A attached to the bill, is not such a one as is contemplated by *Chapter* 187, *Volume* 15, *Laws of Delaware*. It was, in effect and in fact, a full payment by said Company to the creditors who signed said agreement. Such a settlement by such a transfer, even though it may have worked a preference, is not invalid at common law, and, therefore, is not invalid in this State, unless it is within the contemplation of some statute of this State. *Waters v. Comly*, 3 *Harr.* 117.

It is further contended that this statute is of no force and effect so long as the present National Bankruptcy Act remains in existence, and that the statute is, in effect, suspended by the present Bankruptcy Act.

The statute relating to sales of goods in bulk applies only to merchants and not to manufacturers, and, therefore, is wholly inapplicable to the agreement between the Wilmington and Brandywine Leather Company and certain of its creditors. *Wright v. Hart*, 182 *N. Y.* 330: *Off v. Morehead*, 235 *Ill.* 40; *Block v. Schwartz*, 27 *Utah* 387.

*C. W. Smith*, for defendant Farmers' Bank of the State of Delaware (Wilmington Branch), took no part in the argument.

THE CHIEF JUSTICE: The bill of complaint in this case, to which demurrers have been filed by the several defendants, seeks to have transferred from the custody of William T. Lynam, Trustee, to the custody of William T. Lynam, receiver of Wilmington & Brandywine Leather Company, certain assets held by the said Lynam as trustee for the benefit of certain creditors of the leather company, in order that such segregated assets may, with other assets already in the hands of the receiver, be administered generally as receivership estate for all the creditors. To accomplish this purpose the bill undertakes to set up facts to show that the title of the trustee to said property is not sufficient in law or equity to remove it from the control of the Court appointing said receiver, or of such a nature as to deprive creditors generally of the company from ratably participating in the same. In support of such contention the bill of complaint sets forth that the assignment under which the said trustee took control of the assigned assets is null and void by reason of its conflict, first, with *section* 4, *c.* 132, *p.* 960, *of the Revised Statutes of the State of Delaware of* 1852, as amended to 1893; second, with the statute of 13 *Elizabeth*; third, with *chapter* 187, *volume* 15, *Laws of Delaware;* fourth, with *chapter* 387, *volume* 22, *Laws of Delaware.*

The written instruments by which the alleged assignments to William T. Lynam, trustee, were effected, are fully set out,

and appended at length, as Exhibits A and B to the bill of complaint. They need not be particularly set out in this opinion, and will be referred to as Exhibits A and B. Exhibit A is dated August 31st, 1907, and in it the leather company purports to sell and assign to William T. Lynam, trustee, all the finished leather, book ac countsand bills receivable of the said company, schedules thereof being attached, in trust for certain of the creditors of the company. Under it the trustee was authorized and directed to sell the assets attempted to be assigned, and distribute the proceeds among the creditors who became parties to the agreement, ratably, in proportion to their claims. In consideration of the assignment, the creditors participating in the agreement ageed to accept their proportions of the funds or proceeds thus realized in full settlement of their claims, and release the company from any and äll liability whatsoever. Exhibit B is dated the 14th day of September, 1907, which was prior to the execution of Exhibit A by the last creditor that agreed thereto, and is between the leather company and the same creditors who were parties to Exhibit A. Exhibit B provides that, under certain contingencies, which the complainants allege actually occurred, the leather company would, in addition to the personal property mentioned in Exhibit A, turn over to the said trustee the factory and machinery then owned by the company, for the purpose of liquidating the claims of the creditors participating in Exhibit A.

The complainants aver that the attempted effect of Exhibit A is to assign, for the bebnefit of certain preferred creditors, all of the personal assets of the leather company; the attempted effect of Exhibit B is to devote, for the benefit of the same preferred creditors, all of the real estate and plant of the leather company; and the attempted combined effect of Exhibits A and B is to segregate, for the benefit of such preferred creditors, all of the assets of every description of the leather company. Upon such averments of facts the bill of complaint charges as follows:

"(6) Your complainants charge and aver that at the time of the execution of said agreement herein designated as 'Exhibit A,' and at

the time of the execution of said agreement herein designated as 'Exhibit B,' and at all times since the said executions of said agreements, said Wilmington & Brandywine Leather Company was and hath been and now is insolvent; that said agreement herein designated as 'Exhibit A' as a separate instrument, and said agreement herein designated as 'Exhibit B' as a separate instrument, and said agreements herein designated as 'Exhibits A and B' as instruments operating together, were severally and jointly made and entered into by said defendant company in contemplation of its insolvency, contrary to the provisions of *section 4, chapter 132 of the Revised Code of the State of Delaware as amended to* 1893, and that each of said agreements designated as 'Exhibits A and B,' and that both of said agreements together, constituted an assigmnent of the estate and effects of said Wilmington & Brandywine Leather Company for the benefit of the creditors of said company named therein, being parties defendant in this bill of complaint, and that by said agreements operating as said assignments under their provisions, and as a necessary result thereof, said Wilmington & Brandywine Leather Company preferred said creditors, parties defendant to this bill of complaint, mentioned in said agreements, to others of the creditors of said Wilmington & Brandywine Leather Company, and in and by such assignments did secure to said creditors mentioned in said agreements a greater proportion of their several debts or demands against said Wilmington & Brandywine Leather Company than is secured or will be paid to all of the creditors of said Wilmington & Brandywine Leather Company; that by reason of the premises and by virtue of said statute said agreements severally and jointly effecting such assignments are fraudulent and absolutely void, and the estate and effects mentioned and contained therein are liable to be taken in execution or attached for the payment of said Wilmington & Brandywine Leather Company's debts as fully as if no such agreements or assignments has been made. "

I am, therefore, brought to a consideration of the first reason urged by the complainants against the validity of the assignments evidenced by Exhibits A and B, viz., that they are null and void by reason of their conflict with *section* 4 *of chapter* 132 *of the Revised Code.* *Section* 4 of said *chapter* 132 is as follows:

"If any person, in contemplation of insolvency, or in contemplation of taking the benefit of any of the insolvent laws of this State, shall make an assignment of his estate, or effects, for the benefit of creditors, and by such assignment, either under its provisions, or otherwise, shall prefer any creditors to others, or shall, in or by such assignment, secure, or pay, to any creditor a greater proportion of his debt, or demand, than shall be

secured or paid to all his creditors; every such assignment so giving a preference shall be deemed fraudulent and absolutely void, and the estate, or effects, contained therein, shall be liable to be taken in execution, or attached, for the payment of such assignor's debts, as fully as if no such assignment had been made; and the person making such fraudulent assignment shall forever be deprived of the benefit of any insolvent law of this State."

The defendants attack the application of said statute to this case on the following grounds: (1) That Exhibit B, inasmuch as it was conditional, and was not in fact carried out, owing to the intervention of the receivership, is a nullity except for evidential purposes, and that the sole matter to which the statute can be properly urged as applicable is Exhibit A. (2) That Exhibit A is a sale of the goods and accounts receivable mentioned therein, and that such a transaction is a permissible method for the payment of selected creditors by a failing debtor. (3) That Exhibit A was not made by the debtor in contemplation of insolvency within the meaning of the statute, it being argued that "contemplation of insolvency" means, not only actual insolvency and the knowledge of it, but also the contemplation of actually stopping business and incapacity to carry on business. (4) That Exhibit A in fact only operated to assign a portion of the property of the debtor corporation for the benefit of its preferred creditors, and that therefore *section 4 of chapter 132 of the Code* has no application.

The complainants, in reply to such contentions made by the defendants, insist and aver: (a) That Exhibits A and B, although bearing different dates, were in substance parts of the same transaction, Exhibit B having been executed before the complete execution of Exhibit A, and Exhibit B having been executed upon the same and single consideration upon which Exhibit A was made. (b) That a sale may be an assignment or an assignment a sale. The fact that Exhibit A was in form a sale would not be at all inconsistent with the contention that it was an assignment under the terms of the statute in question, and subject to its prohibitions. Equity pierces through mere forms. And, moreover, that the debtor wholly disregarded the express stipulation that such assigned property

should be received in full settlement, and endeavored to secure for the further benefit of the combining creditors the exclusive benefit of all the balance of the debtor's property by the execution of Exhibit B. (c) That even if "contemplation of insolvency" means, not only actual insolvency and the knowledge of it, but also the contemplation of stopping business because of insolvency, the averments of the bill of complaint bring the case within such principle of construction, because it is shown that the debtor had disposed of all its personal property which it could use as a working capital; that the debtor did little, if any, business, in fact, between the execution of Exhibit A and the appointment of a receiver in a suit wherein the debtor by its answer formally admitted its insolvency; that in Exhibit B the debtor expressly indicates an intention not to carry on its business except upon a reorganization with cash capital thereafter to be procured; and that the only method of proceeding upon a reorganization suggested in Exhibit B was by the formation of a new corporation. (d) If Exhibits A and B can be construed together as parts of a transaction involving the attempted assignment of all the property of the debtor corporation to certain preferred creditors, defendants' fourth contention falls; but, if they should not be so construed, it is insisted that such a construction of the statute as would limit it to an assignment of the entire assets of a failing debtor is a forced one, and that no Delaware court has so construed the Act.

Such are the contentions of the respective parties touching that branch of the case which involves the application of the statute above mentioned to the facts averred in the bill of complaint. Logically, the first question to be determined by the Court is whether Exhibits A and B should be taken and construed together as constituting one single transaction, or whether they are separate and independent transactions; Exhibit B having no relation to or bearing upon Exhibit A, except for evidentiary purposes, and as throwing light upon the intent and purpose of the debtor corporation in the execution of Exhibit A. In view of all the facts averred in complainants' bill, and admitted by the demurrers, I think it is manifest that

it was the purpose of the leather company by the two exhibits to transfer for the exclusive benefit of the signing creditors all the assets of the debtor to the exclusion of the remaining creditors, and that the exhibits, although bearing different dates, were intended to act conjointly and operate together, I think clearly appears. Together they cover practically all the assets of the debtor. They were executed upon the same consideration, and Exhibit B was executed before the complete execution by the creditors of Exhibit A. Their joint effect would certainly have been to prefer such combining creditors in payment out of the entire assets of the debtor and leave the outside creditors entirely unpaid. It is contended that Exhibit B was conditional, in that the property included under it was to be transferred upon the happening of a certain contingency. But it will be observed that by the terms of said exhibit the leather company agreed to transfer to the trustee named in Exhibit A, and for the benefit of the creditors named therein, the factory and machinery of the company, in addition to the property transferred by Exhibit A, "unless the said party of the first part shall, within ninety days from this date, succeed in reorganizing its business by the formation of a new corporation, or otherwise with a cash capital, in addition to its factory, of at least $15,000." Exhibit B was executed only two weeks after Exhibit A, and in view of the hopeless financial condition of the company at the time, as shown by the bill of complaint and by the admission of insolvency made soon thereafter by the company, I am constrained to think the reorganization of the company was a contingency entirely too remote and impossible to be considered. And the fact that the appointment of a receiver prevented the combining or favored creditors from getting the benefits provided for in Exhibit B cannot make such exhibit any the less a part of the one and principal purpose of the company, to wit, the asisgnment of all its property for the benefit of the creditors named in Exhibit A. There can be no doubt that it was the purpose and the expectation of the company that the creditors who signed Exhibit A should also receive the property mentioned in Exhibit B; and there can

be as little doubt that they would have received it, if a receiver for the company had not been appointed.

It may be argued that Exhibit A was complete in itself and in no wise dependent upon Exhibit B. It may also be argued that Exhibit B is not a complete and perfect assignment in itself. But I think the latter is supplementary to the former, and intended, and must be taken, to be a part of the same transaction. My conclusion, therefore, is that Exhibit B must be construed in connection with Exhibit A, and that it constituted a material part of the design and attempt of the defendant corporation to transfer all its property to such creditors as might enter into the agreement proposed in Exhibit A.

Such being my conclusion, it is not necessary, in this connection, to consider the question whether the assignment, in order to be invalid under the statute in question, must be of all the debtor's property or estate, because the two exhibits together covered practically all of the defendant company's property. There was some suggestion at the argument by counsel for the defendants that there was property from which about $1,400 was realized at the receiver's sale that neither exhibit covered. But I think it cannot be seriously contended that the leaving out of a mere vestige or remnant of the debtor's property would prevent the application of the statute. Such a contention would be unreasonable and wholly untenable. But, even though it could be held that Exhibit B was not an assignment within the meaning of the Act, or that it could not be taken and construed in connection with Exhibit A and as a part thereof, it may nevertheless be considered by the Court in determining the intent and purpose of the company at the time of the execution of Exhibit A; that is, whether the assignment evidenced by Exhibit A was made in contemplation of insolvency. Indeed, it is admitted by counsel for the defendants that it may be considered by the Court for such purpose.

It is insisted by the defendants that the true meaning and intent of the words "in contemplation of insolvency," contained in the statute, is not only the fact and knowledge of insolvency, but also the incapacity to continue business and the intention of stopping business. Some authorities have been

cited in support of this proposition; but, if the Court is right in its conclusion that the two exhibits constitute one and the same transaction, the cases cited, of course, would not apply. I think, however, there is no room for doubt that the leather company, at the time of the execution of Exhibit B, was not only insolvent, and knew it, but had no real intention of continuing business, certainly not in the name of such company, or for any appreciable length of time. Under Exhibit A the company had parted absolutely with all its personal property and working capital, and by Exhibit B had agreed to transfer to the same people and for the same consideration all its plant and real estate, subject only to a contingency that no reasonable person would think could possibly happen, in view of the financial condition of the company as disclosed by the bill of complaint. The indebtedness of the company evidenced by the proved and provable accounts amounted to nearly $70,000. The bill shows that the fund in the hands of the trustee resulting from a sale under Exhibit A was $30,800, and the amount of the creditors' claims who signed such exhibit about $59,000. The proceeds of the sale of the company's factory, buildings, tools and fixtures at the receiver's sale amounted to $10,700. The liens on said factory, etc., aggregated $8,770, leaving a balance from such fund of only $1,930. And there is the further fact that the company, in the receivership proceedings, by its answer solemnly admitted its insolvency. So that the conclusion is inevitable that the company at the time of the attempted assignment was insolvent and had knowledge of it.

It is argued, however, that Exhibit B shows that the company expected, notwithstanding such insolvency, to continue in business. The argument is based upon the provision or suggestion contained in Exhibit B that the company might effect a reorganization within ninety days by the formation of a new corporation with a cash capital of at least $15,000 in addition to its factory. It will be observed that the only hope or suggestion of continuing in business was "by the formation of a new corporation," which seems to indicate very clearly that the defendant corporation did not expect to continue in business, and in fact was not financially able to do so. But,

independent of this fact, it is perfectly manifest that the financial condition of the company was at the time so bad as to negative any serious thought of its continuing in business, or to make such thought so remote and improbable as not to be worthy of serious consideration. The only object the company could have had, therefore, in executing Exhibit B, was to vest in the creditors named in Exhibit A practically all the property of the company not transferred by Exhibit A.

But let us assume that Exhibit B had no connection with Exhibit A and cannot be considered a part thereof. If such be the proper construction, then it is argured with much force and confidence that the statute under consideration cannot apply, because the true meaning and intent of the statute is that the assignment shall embrace all the property or estate of the insolvent debtor, and not a part only. It is contended that under the decisions of this State such is the law. I have examined the cases cited upon this point with much care, and fail to find that the distinct question now being considered has ever been ruled upon in this State. It is true that our courts, in cases involving the application of said statute, have used the words "all of debtor's property," or "all of debtor's as-sets"; but in such cases the bond given, or sale or assignment made, covered the entire property, and the question whether an assignment of the substantial or greater part of the property would fall within the operation of the statute was not determined. The only case, I think, which indicates what the decision of the court would have been on such question is *Groff v. Cooper*, 6 *Houst*. 36. This case is cited by the defendants because of the language used by Chief Justice Comegys in stating what was decided in *Waters v. Comly*, 3 *Harr*. 117, *viz.:* "That a bond given by a man in failing circumstances to a creditor, covering all his property, for the benefit of preferred creditors, would be void under our act against fraudulent insolvency." But the Chief Justice, in interpreting broadly the scope of the decision in the former case, uses the following language:

"In the case of *Waters, et al., v. Comly*, the Court of Errors and Appeals of this State, in effect, declared the law to be, that any transaction

of a debtor in failing circumstances (as, in this case, Hickman was) which seeks to prefer certain creditors to others by securing their debts out of his property and leaving the rest unpaid, is in fraud of our statute against fraudulent assigmnents, and void."

It would extend this opinion to an unreasonable length if all the Delaware cases cited were specially referred to. A careful analysis of those cases, however, satisfactorily shows: 1. That in no case has the question I am now considering been distinctly passed upon. While in *Waters v. Comly*, *Groff v. Cooper*, and some other cases, the court used the words "all of the debtor's property or estate," in *King v. Johnson*, 5 *Harr*. 31, and *Humphries v. Smith*, 4 *Houst*. 9, an assignment made by the debtor of a part of his property was declared void. In the latter cases, however, it does not appear that the question now under consideration was argued or raised. 2. That while it has been held that a debtor in failing circumstances may give bond to a creditor to secure a *bona fide* debt, even for an amount sufficient to cover all his property, and that such debtor may make a *bona fide* sale of property to a *bona fide* creditor, yet I think no case can be found where the Court has sanctioned, or held valid, an assignment by such debtor of his property for the benefit of certain creditors and to the exclusion of the rest. On the contrary, it appears that in every such case that has been before the courts of this State the assignment has been declared void under the statute.

In the case of *Stockley v. Horsey*, 4 *Houst*. 603, the Court said:

"Our law recognizes two distinct policies with respect to the liquidation of a failing debtor's estate, and one is the policy of giving to a creditor the benefit of his diligence as against other creditors. This policy obtains so long as the debtor keeps the control of his property by not making an assignment. If no assignment be made he may prefer an honest creditor, though he be in failing circumstances, and though the preference in effect covers all his property for the benefit of creditors; but the moment he makes an assignment, and not before, the policy of equal distribution among all the creditors prevails, and the debtor can give no preference either under the assignment, or by an act done in contemplation of it. There is sound reason for treating the fact of an assignment as a test of the application of this statute to the debtor."

And in the case of *Wharton v. Clements*, 3 *Del. Ch.* 209, the Court said:

"The prohibition of this clause against a preference among creditors applies only to cases in which an assignment for the benefit of creditors is made.  * * *  Both the terms and the policy of the statute are clear; what it requires is the equal distribution among all creditors of the debtor's effects, *under an assignment made for the* benefit of creditors. * * *"

Other cases might be cited to the same effect.

3. That no matter what form, or character, the act of the failing debtor may assume, if it be in purpose and effect an assignment of such debtor's estate or effects, in contemplation of insolvency, and in preference of certain creditors over others, such act is an assignment within the meaning of the statute. In the leading case of *Waters v. Comly* the Court held that a judgment bond given by a debtor, in contemplation of insolvency, to a creditor for the benefit of himself and certain other preferred creditors, amounted in equity to an assignment of his property in violation of the statute, and this case is distinctly approved and followed by others.  In the case of *Groff v. Cooper* it was held that a transaction purporting to be a sale of a stock of goods was an assignment within the meaning of the statute, and therefore void.  So that, while it has been held that the statute applies only in cases of an assignment, the courts, and especially courts of equity, will not permit the application of the statute to be defeated by giving an assignment the name or appearance of a sale, or by effecting an assignment in fact by giving a bond sufficient to cover the property of the debtor.  But it is to be remembered that this is not a case where a bond was given, so that the distinctions made in some of the cases as to what constitutes an assignment are not material here.  Neither can it be seriously urged, I think, that Exhibit A constituted a sale.  Such exhibit has no appearance of a sale, even when considered alone.  Even if the agreement of the creditors to accept their *pro rata* share of the proceeds of sale in full settlement of their claims could be regarded as a good and sufficient consideration or price to be paid for the property transferred to them, it conclusively appears by Exhibit B that there had been in fact no such agreement as to the

consideration, because Exhibit B transferred to the same creditors a large amount of additional property without any new consideration therefor. It is clear that Exhibit A constitutes an assignment pure and simple, and cannot be regarded in any sense as a sale.

The courts of this State never having passed upon the question whether an assignment, in contemplation of insolvency, by a failing debtor, of a substantial, or very large part, of his property, as in the present case, for the benefit of some of his creditors, is prohibited by the statute, it becomes necessary for this Court to express an opinion upon that question. What shall be the test? It seems to me that the language of the statute, taken in connection with the manifest purpose and policy of its enactment, supplies the test.

It is to be observed, first, that the statute nowhere says that the assignment shall be of *all* the estate or effects of the debtor, and the Court cannot read such words into the statute, unless it is clear that such is the true meaning and intent of the act as gathered from its language. I think it is not seriously contended that the application of the statute can be defeated by omitting from the assignment a very small part of the debtor's property, because if that were possible it could be defeated or evaded in any instance, and the manifest purpose of the act thwarted altogether. Then, if the statute applies where a small portion of the property is not included, how much must be left out in order to prevent its application? Where shall the line be drawn? How shall the courts determine? How much of his property may an insolvent debtor leave out of an assignment made in favor of his preferred creditors, or how little may he leave out for the benefit of his non-preferred creditors? Shall it depend upon the option of the debtor how much shall be included and how much omitted? Must the unpreferred creditors in every case be compelled to go into court to ascertain whether the proportion of the debtor's property not included in the assignment is reasonable and proper under the law, when such assignment would have been void if his entire estate had been included therein? Certainly the act does not admit of any such construction. It must be con-

strued reasonably, according to its language, having due regard for its manifest purpose, the mischief it was designed to remedy, and the wrongs it was intended to cure. If a law is plain and within the legislative power, it declares itself. The statute acts as its own interpreter.

The language of the statute seems perfectly clear, and in no wise ambiguous or doubtful. It means just what it says; and the broad scope, as well as the specific object, of the Act, is to make it impossible for any failing debtor, in contemplation of insolvency, *by an assignment, to prefer any creditors to others*, or by such assignment *secure or pay to any creditor a greater proportion of his debt or demand than shall be secured or paid to all his creditors*. It does not mean that a failing debtor may not honestly prefer a *bona fide* creditor by giving a bond, or by making a *bona fide* sale; but it does prevent him from making an assignment, within the meaning of the statute, under the guise or form of a bond or sale. Whatever may be the technical meaning of an "assignment," as construed by courts of other states in the cases cited by the defendants, and which are not at all similar to this case, this Court holds that such term as employed in our statute does not contemplate only cases where the entire property, assets, or estate is assigned, but also cases where a part thereof, as in the case at bar, is assigned, and where the effect of such assignment is to "prefer any creditor to others, or secure or pay to any creditor a greater proportion of his debt, or demand, than shall be secured or paid to all his creditors." It means that the debtor may not make an assignment of his property, or a part of it, for the benefit of some of his creditors, if by so doing he shall make it impossible for the remaining creditors to receive as great a proportion of their claims as such preferred creditors receive.

This I consider a fair and reasonable construction of the statute and the true test of its application. It may be said that in the case before me there was assigned by Exhibit A, not only a large and substantial part of the insolvent company's property, but a greatly preponderating part thereof. Indeed, it may be truly said it constituted practically all of its property, or very nearly so, because there remained in the hands of

the receiver, from the sale of the property covered by Exhibit B after the payment of the liens thereon, only $1,930. It is, apparent that there would have been but little left from that fund for distribution among the creditors of the company.

In determining the foregoing questions I have not failed to notice the additional points made in the brief of one of the solicitors for the defendants, viz.: (1) That the assignment in question is not an assignment for the benefit of creditors, because it contains no provision that the surplus, if any, shall be returned to the assignor; and (2) that a transfer of property to a third person in trust to hold and dispose of for the benefit of the creditors is a permissible form of an assignment for the benefit of creditors.

Respecting the first point, it might be only necessary to say that in the one before me there could not possibly have been any surplus, and such fact was known to all the parties to the assignment. Such a provision would have been entirely useless. But it may be further said, as to this as well as the second point, that courts, and especially courts of equity, will look to the substance and effect of the act charged to be in violation of the statute, and not to the form of the act. *Waters v. Comly*, and other Delaware cases. A transaction constituting an assignment in any form, which fulfills the other requirements of the prohibition of the act, is clearly within such prohibition. A court of equity will not have its hand stayed by any technical omission or matter of form in the act complained of, which might be resorted to for the purpose of avoiding the statute, or which would be useless under the facts and circumstances of the particular case.

In view of the conclusion reached by the Court upon the first and most important point in the case, to wit, the application of the statute in question to the facts averred in complainants' bill of complaint, I think it unnecessary to express any opinion upon the other questions raised and argued.

The Court is of the opinion that the assignment made by the defendant corporation is void under the provisions of *section* 4, *c*. 132, *of the Revised Code*, and the demurrers filed by the several defendants to the complainants' bill of complaint are overruled.

Let an order be entered accordingly.