BRADFORD S. MAGILL,
Plaintiff,

*vs.*

NORTH AMERICAN REFRACTORIES COMPANY, a corporation of the State of Delaware, and W. G. BAUER, C. H. GARTRELL, E. F. HAYES, J. E. HINDMAN, H. H. HOPWOOD, J. H. MCNERNEY, S. P. PEJEAU, W. R. RAMSAY, H. E. STUHLER and E. W. VALENSI,

Defendants.

BRADFORD S. MAGILL,
Plaintiff,

*vs.*

NORTH AMERICAN REFRACTORIES COMPANY, a corporation of the State of Delaware, and FRANCIS H. BEAM, SAMUEL G. WELLMAN, JOSEPH A. STOTT, CHARLES H. GARTRELL, EDWARD F. HAYES, H. H. HOPWOOD, E. W. VALENSI, W. R. RAMSAY and H. E. STUHLER,

Defendants.

*New Castle, July 19, 1956.*

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, for plaintiff.

*William Prickett* and *William Prickett, Jr.,* Wilmington, for defendants.

MARVEL, Vice Chancellor: Plaintiff is the holder of 1,000 shares of the capital stock of the defendant corporation and seeks a statutory review [1] of election of directors and officers of the defendant corporation.

The first of the above numbered actions (between plaintiff and the then directors of the defendant corporation) sought a declaratory judgment and injunctive relief against the holding of the scheduled May 1, 1956 annual meeting of stockholders of the corporation at which directors were to be elected. The complaint charged non-compliance with § 219 of *Title* 8, *Del.C.* A motion for a preliminary injunction was denied and the meeting was held. Plaintiff then amended his complaint in Civil Action No. 717 and filed a new action (Civil Action No. 721) against the directors (other than himself) declared elected at the May 1 meeting with the purpose of obtaining a review of the results of the election. In both actions North American Refractories Company is named a defendant.

The first question to be decided on cross motions for summary judgment in the consolidated action is whether or not the vote taken at the meeting of May 1 resulted in the election of a valid board and if so the names of the directors and officers now in office.

Plaintiff contends that because the list of stockholders posted by defendants prior to the election and made available at the election pursuant to the terms of § 219 of *Title* 8, *Del.C.* failed to contain the addresses of stockholders and the number of shares of stock held by each stockholder, there was a wilful failure to comply with that section, making ineligible for election to office not only incumbent di-

1. § 225, *Title* 8, *Del.C.*

rectors but also those directors chosen from a so-called alternate management slate who as attorneys advised management that the use of a complete list of stockholders entitled to vote arranged in alphabetical order constituted compliance with § 219 of *Title 8, Del.C.* At the conclusion of the election at which cumulative voting was permitted plaintiff and nine management candidates were declared elected. Management nominees received a total of 1,685,490 votes, while Magill and others on his slate received a total of 259,690 votes.

It is unnecessary to go into the facts in detail. The story of recent Delaware litigation between the present parties is one of diligent effort on plaintiff's part to obtain information about the corporate defendant's stockholders and of equally diligent effort on defendants' part to frustrate plaintiff's purpose. Having failed because of the exigencies of time to get to grips with defendants by way of mandamus in Superior Court, plaintiff, as has been noted above, first sought injunctive relief in this Court and now seeks review of the May 1 election, charging that all but two of the persons nominated by management were ineligible for the office of director. Plaintiff specifically seeks an order under the statute declaring plaintiff's slate of eight candidates plus two eligible management candidates to be the corporate defendant's validly elected board or in the alternative an order directing the holding of a new election. Plaintiff recognizes that acceptance of his interpretation of the meaning of § 219 by the Court would probably result in an order for a new election. He contends, however, that defendants' tainted candidates should be declared ineligible for office at such election.

As I read the papers before me, there is no dispute as to any fact material to decision of the basic issue, namely, whether or not there was compliance with § 219 of the Delaware Corporation Law.

Plaintiff contends that inasmuch as there are no Delaware cases interpreting § 219 the Court must be guided in determining the meaning of the critical portion of the section by an allegedly established practice. Plaintiff insists that to read the word "list" as meaning a list of names and nothing more would be a slavish acceptance of the literal at the expense of common sense and common usage. Plaintiff

argues in support of his theory of practical construction that not only has it been the general practice in Delaware to construe the phrase "complete list" as meaning the type of list which plaintiff demanded be posted, a practice allegedly recognized and given legal force by the Legislature by subsequent re-enactments of the critical language of § 219 without change, but that the corporate defendant itself observed such established practice in part by using such a list as a practical aid to conducting the May 1 meeting.

None of the Delaware cases in which § 219 is referred to throws any light on the meaning of the phrase "complete list of the stockholders entitled to vote * * *." Accordingly, this Court must decide as a matter of first instance whether plaintiff's or defendants' view of the meaning of the phrase is the correct one.

Section 219 of *Title* 8, *Del.C.* was first enacted into law in 1883 in substantially its present form in a section governing voting which included a paragraph declaring the stock ledgers or in their absence the transfer books to be the only evidence of the right to vote, § 22, *Chap.* 147, *Vol.* 17, *Laws of Delaware.* In 1899, this section, § 17 of *Chap.* 273, *Vol.* 21, *Laws of Delaware,* was re-enacted into law as part of what has come to be known as the General Corporation Law of the State of Delaware and in this section was also included an elaboration of what is now with minor changes § 220 of *Title* 8, *Del.C.*

At the time of the enactment of the 1883 statute providing for the posting of a complete list of stockholders ten days before an election, a New Jersey corporate law which can be assumed to have been the prototype of the corresponding Delaware statute (*Chicago Corp. v. Munds, infra*) required that such list disclose the number of shares held by each stockholder, *Downing v. Potts,* 23 *N.J.L.* 66, decided in 1851. Furthermore, in 1899, when our basic General Corporation Law was enacted, the New Jersey statute governing the posting of a list of stockholders prior to a meeting (*C.S. p.* 1620, § 33) required that such list include not only the number of shares held by each stockholder but also the residence of each stockholder, *In re Zenitherm Co.,* 95 *N.J.L.* 297, 113 *A.* 327.

The fact that the legislators of Delaware in 1883 and again in 1899 enacted a statute which excluded language found in the earlier New Jersey prototypes is significant. Because the earlier New Jersey laws served as models for the Delaware statutes providing for incorporation under a general law, a departure in Delaware from the phraseology of a New Jersey model has been considered to be indicative of a legislative intent that a change of meaning was intended. In the case of *Chicago Corp. v. Munds*, 20 *Del.Ch*. 142, 172 *A*. 452, 454, Chancellor Josiah Wolcott after observing that it is common knowledge that the General Corporation Law of Delaware enacted in 1899 was modeled after the then existing New Jersey Act, stated in reference to the phraseology of the valuation section of the Delaware merger statute:

> "When, therefore, the legislature of this State, having before it the New Jersey act with its yard stick of 'full market value,' rejected that standard of measurement and used the simple one of 'value,' the inference is strong that as there was a design in the varying of the manner of expression there was a like design in the varying of the intent or meaning."

In view of its legislative history, I am of the opinion that § 219 of *Title* 8, *Del.C*. requires a statutory preparation and display of a complete list of stockholders entitled to vote, arranged alphabetically and that such list also be available for inspection by stockholders at elections. It does not require disclosure of stockholders' addresses and the number of shares held by them.

Section 220 of *Title* 8, *Del.C*. on the other hand clearly provides that, "The original or duplicate stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by section 219 * * * or to vote in person or by proxy at any such election", and it is this 'list" which a stockholder may inspect only as a result of an order in mandamus when leave to inspect is refused.

While I am satisfied that there has been a practice of some years standing on the part of Delaware corporations of meeting the terms of § 219 by the use of a list containing the information required to appear on the stock ledger, this practice is not required by the terms of § 219.

The fact that lists containing addresses and the number of shares held by each stockholder serve a purpose in that they are useful in checking proxies, establishing the existence of a quorum, counting votes, and otherwise facilitating the conduct of corporate meetings, such cannot change the meaning of what I believe to be an unambiguous statute, *Brown v. Wilmington and Brandywine Leather Co., 9 Del.Ch. 39, 74 A.* 1105; *Delaware Steeplechase and Race Association v. Wise, 2 Terry 587, 27 A.2d 357.* The stock ledger remains the only evidence of who is entitled to vote, § 220, *Title 8, Del.C., Atterbury v. Consolidated Coppermines Corp., 26 Del.Ch. 1, 20 A.2d 743.*

As was stated by Chancellor Josiah Wolcott, sitting as Presiding Judge in Orphans' Court in *In re Vandyke's Estate, 15 Del.Ch. 459, 136 A.* 147, 148, in regard to a practice long established at the bar which was at variance with the terms of an unambiguous statute governing priorities in the payment of claims against proceeds arising from the sale of land of a decedent's estate:

> "If the policy of the statute is wrong, the Legislature is the only place where relief against it may be obtained. The fact, if it be a fact as is contended, that the bar of the state has ever since the enactment of the statute regarded judgments obtained against the executor or administrator as of no higher grade in the distribution of the proceeds from a decedent's lands sold for the payment of debts than the original claims upon which the judgments were obtained, cannot be allowed the force of overruling the clear meaning of the statute. This is the first time that the point has ever been presented in our courts, and it must be answered as the statute compels."

Furthermore, in the cited case the statute in question (§ 3427, *Revised Code of Delaware, 1915, 12 Del.C.* § 2715) had been re-enacted several times in codifications, its critical language having first appeared in an Act of 1829 entitled Executors and Administrators (p. 234, *Laws of Delaware, 1829*). While counsel in the Vandyke case apparently made no point of this legislative history, and the Chancellor did not discuss it, he declined to legalize a practice at odds with an unambiguous statute. His conclusions confirm my opinion

that there has been no implied legislative amendment of what I have held to be an unambiguous statute. Compare *Monacelli v. Grimes, 9 Terry* 122, 99 *A.2d* 255.

Having held that there was compliance with the requirements of § 219, *Title* 8, *Del.C.* in connection with the May 1, 1956 meeting, summary judgment will be entered for defendants declaring the directors and officers of the corporate defendant now in office to be the validly elected board and officers of the defendant corporation.

Order on notice.